IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAYNE PHARMA (USA) INC., <br><br> Plaintiff, <br><br> v. <br><br> BIGMAR, INC., BIGMAR-BIOREN PHARMACEUTICALS, S.A. and AMERICAN PHARMACEUTICAL PARTNERS, INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 04-1564 (KAJ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF MAYNE PHARMA (USA) INC.'S ANSWERING BRIEF
IN OPPOSITION TO PARTIAL MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6698
apoff@ycst.com

*Attorneys for Plaintiff Mayne Pharma (USA) Inc.*

Dated: March 18, 2005

## TABLE OF CONTENTS

PAGE

I. SUMMARY OF ARGUMENT ........................................................................................1

II. RELEVANT ALLEGATIONS OF THE COMPLAINT ......................................................2

III. ARGUMENT ..................................................................................................................4

    A. Breach of Contract – Counts IX, X, XI, XII and XIII ................................................4

    B. Fraudulent Conveyance – Count XVII ......................................................................6

IV. CONCLUSION ................................................................................................................9

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Continuing Creditors' Committee of Star Telecommunications, Inc v. Edgecomb*,
2004 U.S. Dist. LEXIS 25807 (D. Del. 2004) .................................................................. 4

*Copley Press, Inc. v. Peregrine Sys.*,
311 B.R. 679 (D. Del. 2004) ............................................................................................ 9

*Holland v. Williams Mountain Coal Co.*,
256 F.3d 819 (D.C. Cir. 2001) ......................................................................................... 5

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......................................................................................... 5

*Mozingo v. Correct Manufacturing Corp.*,
752 F.2d 168 (5th Cir. 1985) ........................................................................................... 5

*Philadelphia Electric Co. v. Hercules Inc.*,
762 F.2d 303 (3d Cir. 1985) ............................................................................................ 5

*Richards v. Jones*,
142 A. 832 (Del. Ch. 1928) ............................................................................................. 7

*Weston v. Pennsylvania*,
251 F.3d 420 (3d Cir. 2001) ............................................................................................ 5

**State Statutes**

6 *Del. C.* § 1305(a) ............................................................................................................... 8

6 *Del. C.* § 1301(3)-(4) .......................................................................................................... 7

6 *Del. C.* § 1304(1) ............................................................................................................... 8

6 *Del. C.* § 1304(8) ............................................................................................................... 8

6 *Del. C.* § 1304(a) ............................................................................................................... 7

6 *Del. C.* § 1302(b) ............................................................................................................... 8

This action arises from breaches by defendants Bigmar Inc. and Bigmar-Bioren Pharmaceuticals, S.A. (together "Bigmar") of their contracts to supply plaintiff Mayne Pharma (USA) Inc. ("Mayne") with certain late-stage cancer treatment drugs. It also arises from a transaction (a) by which Bigmar (now a void Delaware corporation that has defaulted in this action) sought to frustrate Mayne's claims of breach by fraudulently transferring its assets – the manufacturing facilities for the drugs – for insufficient consideration to defendant American Pharmaceutical Partners, Inc. ("APP") and (b) by which APP thereby eliminated Mayne as a competitor from the wholesale markets for the drugs in the United States (since Bigmar was Mayne's only possible source of supply), foreclosed competition in those already concentrated markets and gained or attempted to gain monopolies in the markets for some of the drugs.

The Complaint seeks declaratory and equitable relief and damages based on claims for violations of the federal antitrust laws, breach of contract, tortious interference with contractual relations and prospective business advantage, fraud and fraudulent conveyance. APP has moved

Mayne's claims against Bigmar. Contrary to APP's assertion, the Complaint contains more than ample allegations that the transfer was done for this purpose. Such is indeed a basis for Mayne's fraudulent conveyance claim.

Second, with respect to the fraudulent conveyance claim, APP's argument that Mayne has failed to allege facts sufficient to establish a creditor-debtor relationship between Mayne and Bigmar is contrary to all authority. The alleged breach of the supply contracts by Bigmar gave rise to a creditor-debtor relationship as of the date of the breach. Mayne was therefore a creditor of Bigmar well before the fraudulent transfer of the manufacturing facility.

Finally, APP also wrongly contends that the fraudulent conveyance claim must fail because Mayne has not alleged that Bigmar was insolvent at the time of the transfer. As the fraudulent transfer statute expressly provides, Mayne is not required to allege insolvency to state a claim for fraudulent conveyance if it alleges that the transfer was made to hinder Mayne's claims against Bigmar. The Complaint so alleges. In all events, the Complaint does allege sufficient facts from which the Court may conclude that Bigmar was insolvent, thereby establishing an alternative and independent basis for the fraudulent conveyance claim.

## II.   RELEVANT ALLEGATIONS OF THE COMPLAINT

In Fall 2003, Mayne entered into one and assumed two long-term supply contracts with Bigmar (the "Supply Contracts"). (Complaint ¶ 17) The Supply Contracts provided for Bigmar's manufacture and sale of three cancer drugs to Mayne. (*Id.*) The drugs were Methotrexate, Leucovorin and Fluorouracil. (*Id.* ¶¶ 17-21) Each of the contracts includes a provision stating that successors to the parties to the contract are bound by the terms of the contract. (*Id.* ¶¶ 79, 84)

Between November 20, 2003 and January 5, 2004, Mayne placed nineteen purchase orders with Bigmar for Methotrexate, Leucovorin and Fluorouracil. (*Id.* ¶¶ 22-25) Bigmar failed to fill these purchase orders as the dates for filling them came due under the Supply Contracts from December 4, 2003 through March 5, 2004. (*Id.* ¶¶ 20-25) It has never filled them. (*Id.*) Bigmar was "experiencing financial difficulties." (*Id.* ¶ 32) Its defaults under the Supply Contracts were "directly related to the financial situation of Bigmar." (*Id.* ¶ 29) When Bigmar failed to fill the purchase orders on time, Bigmar's representative, John Tramontana, the chief executive officer of Bigmar, assured Mayne's representatives that Bigmar would perform the Supply Contracts when he knew that Bigmar would soon sell its manufacturing facilities to APP, rendering Bigmar's performance impossible, and that APP would not perform the Contracts. (*Id.* ¶¶ 30-31) When Bigmar failed to fill the purchase orders, Mayne sought to help Bigmar produce the drugs by lending raw materials to Bigmar. (*Id.* ¶ 26)[1]

On or about July 28, 2004, APP acquired from Bigmar the Barbengo facility and with it all of Bigmar's equipment and assets necessary for the manufacture of the cancer drugs. (*Id.* ¶ 32) APP paid $11 million for the facility and certain related product rights, a portion of which was paid directly to Tramontana rather than to Bigmar. (*Id.*) Bigmar therefore did not receive full value for the facility. (*Id.*) APP and Bigmar transferred the facility for the purpose of

---

[1] The Supply Contracts were amended to reflect Mayne's contribution. (*Id.* ¶ 26) Notwithstanding Mayne's assistance, Bigmar never filled a single purchase order. (*Id.* ¶ 27) Bigmar also wasted a significant portion of the raw materials provided by Mayne when it allowed an entire batch of Methotrexate to become contaminated with microbes. (*Id.* ¶ 104) Mayne has never been compensated for the loss of those materials. (*Id.* ¶ 104-05)

3

hindering Mayne in its capacity as a creditor of Bigmar. (*Id.* ¶ 32) Following the acquisition, Bigmar began to wind down its business operations and may now no longer exist.[2] (*Id.* ¶ 33)

As a result of the acquisition, APP now owns and controls all of Bigmar's equipment for the production of the cancer drugs. (*Id.*) APP, however, has refused to perform any of the Supply Contracts and has failed to date to fill any of the outstanding purchase orders. (*Id.*) Due to the lack of alternative manufacturers of the cancer drugs, Mayne has been unable to secure an alternative supply for all but one dosage of the drugs. (*Id.* ¶ 34)

III.   **ARGUMENT**

Contrary to APP's assertion, the Complaint does sufficiently allege successor liability on the part of APP under the Supply Contracts, and therefore breach of the Contracts by APP, and also adequately alleges fraudulent conveyance. APP's partial motion to dismiss pursuant to Rule 12(b)(6) should therefore be denied.[3]

A.   **Breach of Contract – Counts IX, X, XI, XII and XIII**

As support for its position that the breach of contract claims against it must be dismissed, APP wrongly contends that the Complaint fails to allege adequately that APP is liable as a successor to Bigmar under the Supply Contracts. But APP concedes as it must that it may be

---

[2] Through the process of serving the Complaint, Mayne has learned that Bigmar is a void corporation (*see* Ex. A) and no longer maintains a current address with its Delaware agent for service.

[3] "The standard for reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires a court to accept as true all material allegations of the complaint. [citation omitted] 'A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint.' [citation omitted] The moving party has the burden of persuasion. [citation omitted]" *Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb*, 2004 U.S. Dist. LEXIS 25807, at *17 (D. Del. 2004).

4

held liable as a successor to the Supply Contracts if the challenged transfer to it of the Barbengo facility was entered by Bigmar "for the fraudulent purpose of escaping liability" to Mayne. (Opening Brief ("OB") 7) *See Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 824 (D.C. Cir. 2001) ("[A] corporation that acquires manufacturing assets from another corporation does not thereby assume the liabilities of the seller. ... [unless] the transaction was fraudulent."); *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (same); *Philadelphia Electric Co. v. Hercules Inc.*, 762 F.2d 303, 309 (3d Cir. 1985) (noting that successor liability is appropriate where "transfer was without adequate consideration and provisions were not made for creditors of the transferor"). Contrary to APP's assertion, the Complaint does allege such a purpose.[4] As detailed in the following section, *see infra* pp. 6-7, the Complaint alleges that Mayne was a creditor of Bigmar. It specifically alleges that Bigmar had repeatedly breached the Supply Contracts, with the result that a claim against Bigmar for payment of money damages had accrued to Mayne, all before the challenged transfer. *See supra* p. 3. As for the purpose of the transfer, the Complaint squarely alleges that the defendants engaged in the transfer "to hinder Mayne in its capacity . . . as a creditor of Bigmar." (Compl. ¶ 32) As support for this allegation, the Complaint specifically alleges the dates and content of repeated fraudulent assurances by Bigmar's representative, Tramontana, that Bigmar would perform the Supply Contracts when Bigmar knew that it would soon sell the Barbengo facility to APP and that neither Bigmar nor APP would perform the Contracts. (Compl. ¶¶ 30-31) The Complaint also alleges that APP diverted a portion of the purchase price for the Barbengo

---

[4] In ruling on a motion to dismiss under Rule 12(b)(6), the Court must "accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

5

facility from Bigmar to Tramontana, and that Bigmar thereby received inadequate consideration for the transfer. (Compl. ¶ 32) The Complaint contains specific counts for Fraud and Fraudulent Conveyance. (Counts VI, VIII, XVII) The Complaint therefore alleges, with ample factual support, that Bigmar entered the Barbengo transfer "for the fraudulent purpose of escaping liability to Mayne" with the result that the Complaint alleges enough to establish successor liability against APP.[5]

### B.   Fraudulent Conveyance – Count XVII

APP wrongly contends that the fraudulent conveyance claim must be dismissed on the ground that Mayne was not a creditor of Bigmar at the time of the challenged transfer, but allegedly was owed only "*contractual* obligations." (OB 8 (emphasis in original)) In fact, Mayne *was* a creditor of Bigmar at the time of the challenged transfer of the Barbengo facility. The Complaint specifically alleges that Bigmar breached the Supply Contracts, with the result that claims against Bigmar for the payment of money damages had accrued to Mayne, on multiple dates, from December 2003 to March 2004 – all before the challenged transfer of the Barbengo facility on July 29, 2004. (Compl. ¶ 32)[6] Mayne therefore fell squarely within the

---

[5]   Since it alleges the fraudulent purpose of the Barbengo transfer, the Complaint need not allege a *de facto* merger to establish successor liability. It therefore need not allege that the transfer constituted a sale of substantially all Bigmar's assets or that, after the transfer, Bigmar ceased to exist. The Complaint nonetheless alleges specific facts establishing as much. It alleges that Bigmar sold its manufacturing facilities and other assets, began "winding up its affairs" and, at the time of the filing of the Complaint, would "soon cease to exist." (Compl. ¶ 33) Bigmar is now a void corporation and has defaulted in this litigation. *See infra* p. 8.

[6]   It alleges that the Supply Contracts required Bigmar to ship the ordered drugs "by the date identified on the purchase order." (Compl. ¶¶ 20, 21) It further alleges that the purchase orders required Bigmar to ship the drugs on specified dates from December 4, 2003 through March 5, 2004. (*Id.* ¶¶ 22, 23, 24, 25) It alleges that these purchase orders were not timely filled or ever filled, with the result that Bigmar breached the contracts. (*Id.*)

6

definition of "creditor" under the fraudulent transfer statute, which defines a creditor as a "person who has a claim" and defines a "claim" as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 6 *Del. C.* § 1301(3)-(4). As the Delaware Court of Chancery explained in *Richards v. Jones*, 142 A. 832, 833-34 (Del. Ch. 1928), a case cited in the annotations to the statutory definitions,

> The [fraudulent conveyance] statute extends its protections to *all persons having a valid cause of action arising . . . from contracts.* . . . [A plaintiff] may attack a voluntary conveyance made after the liability arose and before suit was brought, to defeat his debt, on the theory that such judgment when once obtained relates back and establishes a debt as of the time when the original cause of action accrued. (citations omitted)(emphasis added)

APP cites no law to the contrary, and there is none. The fraudulent conveyance claim therefore may not be dismissed on the ground that Mayne was not a creditor of Bigmar.[7]

Nor is there any merit to APP's contention that the fraudulent conveyance claim must be dismissed on the ground that Mayne has not, but must allege that Bigmar "was rendered insolvent as a result of the transfer." (OB 8) Mayne need not allege insolvency to maintain a claim for fraudulent conveyance. The fraudulent transfer statute provides a creditor with a cause of action for fraudulent conveyance – regardless of whether there is any allegation of insolvency – if the transfer was made with "actual intent to hinder, delay or defraud any creditor." 6 *Del. C.* § 1304(1). The Complaint plainly alleges such intent: It alleges that the defendants transferred the Barbengo facility "to hinder Mayne in its capacity . . . as a creditor of Bigmar." (Compl. ¶ 32) It also alleges more specifically one of the principal statutory indicia of a hindering intent, the

---

[7] In all events, Mayne need not even have been a creditor of Bigmar at the time of the challenged transfer to maintain the Fraudulent Conveyance Claim. The fraudulent transfer statute provides a cause of action "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred." 6 *Del. C.* § 1304(a).

7

diversion from Bigmar to its chief executive officer of a portion of the purchase price paid for the Barbengo facility, with the result that Bigmar "did not receive adequate value" for the transfer. (*Id.*) 6 *Del. C.* § 1304(8).

Moreover, Mayne has adequately pled facts indicating insolvency and therefore has also alleged an alternative and independent basis for maintaining the fraudulent conveyance claim. The fraudulent transfers statute provides a claim for fraudulent conveyance — regardless of whether there is any allegation of an intent to hinder — if a debtor transfers assets for inadequate consideration when it is insolvent or becomes insolvent as a result of the transfer. 6 *Del. C.* § 1305(a). As described above, and as APP does not contest, the Complaint alleges that the transfer was for inadequate consideration. It also alleges facts sufficient to indicate insolvency. The statute provides that a "debtor who is generally not paying its debts as they become due is presumed to be insolvent." 6 *Del. C.* 1302(b) The Complaint alleges as much: It alleges that Bigmar was "experiencing financial difficulties" (Compl. ¶¶ 32), that it did not comply with its contractual obligations to Mayne as they came due (*see supra* n. 5), that these defaults were "directly related to the financial situation of Bigmar," (*id.* ¶ 29), that Mayne agreed to lend raw materials to Bigmar to assist Bigmar with this problem (*id.* ¶ 26), that Mayne received inadequate consideration for the transfer to APP of the Barbengo facility (*id.* ¶ 32), and that, after the transfer, Bigmar "began the process of winding down all business operations" and "will likely soon cease to exist." (*Id.* ¶ 33) In addition, the Court may take judicial notice of the records of the Delaware Secretary of State showing that Bigmar has failed to pay even its Delaware Annual Franchise Tax and is therefore a void corporation. (*See* Ex. A)[8] Bigmar has

---

[8] "[A] court may take judicial notice of 'matters of public record.'" *Copley Press, Inc. v. Peregrine Sys.*, 311 B.R. 679, 692 (D. Del. 2004).

8

also now defaulted in this action. Mayne therefore has adequately pled a fraudulent conveyance claim on alternative and independent grounds.

## IV.   CONCLUSION

For the foregoing reasons, Mayne respectfully submits that APP's partial motion to dismiss Counts IX, X, XI, XII, XIII and XVII of the Complaint should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
C. Barr Flinn  (No. 4092)
Adam W. Poff  (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6698
apoff@ycst.com

*Attorneys for plaintiff Mayne Pharma (USA) Inc.*

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on March 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Thomas C. Grimm, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on March 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and in the manner indicated below following non-registered parties:

**BY HAND DELIVERY**

> Bigmar, Inc.
> c/o Corporation Service Company
> 7111 Centerville Road
> Wilmington, DE 19808

**BY REGISTERED MAIL**

> Bigmar-Bioren Pharmaceuticals, S.A.
> Via Cadepiano 24/26
> CH-6917 Barbengo, Switzerland

**BY FEDEX**

Joseph F. Coyne, Jr., Esquire
Sheppard, Mullin, Richter & Hampton, LLP
333 South Hope Street,
Los Angeles, CA 90071-1448

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

Attorneys for Plaintiff