IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAYNE PHARMA (USA) INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. 04-1564-KAJ |
| AMERICAN PHARMACEUTICAL | ) |
| PARTNERS, INC., BIGMAR, INC., | ) |
| BIGMAR-BIOREN PHARMACEUTICALS, | ) |
| S.A., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT AMERICAN PHARMACEUTICAL PARTNERS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS IX, X, XI, XII, XIII AND XVII OF THE COMPLAINT
FOR FAILURE TO STATE A CLAIM UPON WHICH A RELIEF
<u>CAN BE GRANTED (FED. R. CIV. P. 12(b)(6))</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilimington, DE 19899-1347
(302) 658-9200
  *Attorneys for Defendant*
  *American Pharmaceutical Partners, Inc.*

OF COUNSEL:

Joseph F. Coyne, Jr.
Mark S. Greenstone
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
(213) 620-1780

April 6, 2005

i.

## TABLE OF CONTENTS

                                                                         Page

INTRODUCTION .................................................................................................................1

ARGUMENT.......................................................................................................................2

       A.      Mayne's Breach Of Contract Claims (Counts IX, X, XI, XII and XIII) Fail To State A Claim Upon Which Relief Can Be Granted...............2

      B.      Mayne's Fraudulent Conveyance Claim Fails To State A Claim Upon Which Relief Can Be Granted .........................................................5

CONCLUSION....................................................................................................................6

# TABLE OF AUTHORITIES

Cases

*Fehl v. S.W.C. Corp.*,
    433 F. Supp. 939 (D. Del. 1977)..................................................................2

*LiButti v. United States*,
    178 F.3d 114 (2nd Cir. 1999)......................................................................2

*MacGregor Sporting Goods, Inc. v. Riddell Sports, Inc.*,
    199 B.R. 502 (D. N.J. 1995)........................................................................5

*National Council On Compensation Ins., Inc. v. Caro & Graifman, P.C.*,
    259 F. Supp. 2d 172 (D. Conn. 2003)..........................................................5

*Raytech Corporation v. White*,
    54 F.3d 187 (3rd Cir. 1995).........................................................................3

*Schmoll v. ACandS, Inc.*,
    703 F. Supp. 868 (D. Or. 1988)...................................................................3

Other Authorities

6 *Del. C.* § 1302 .................................................................................................4

6 *Del. C.* § 1304 .................................................................................................5

Court of Chancery Rule 9(b) ..............................................................................5

## **INTRODUCTION**

Plaintiff Mayne Pharma (USA) Inc.'s ("Mayne") breach of contract and fraudulent conveyance claims against American Pharmaceutical Partners, Inc. ("APP") both hinge upon the same allegation: that APP and defendants Bigmar, Inc. and Bigmar-Bioren Pharmaceuticals, S.A. (collectively, "Bigmar") engaged in the transaction at issue for the fraudulent purpose of "hindering" Mayne's status as a creditor of Bigmar. This allegation is not only unsupported, it is contradicted by the facts pled by Mayne.

Mayne contends in its Answering Brief that it is a creditor of Bigmar because Bigmar allegedly breached contracts whereby it agreed to supply Mayne with certain cancer drugs, thereby giving rise to a claim for damages against Bigmar. However, the Complaint establishes that the sale of Mayne's manufacturing facility (the "Bigmar facility) to APP resulted in the payment of millions of dollars to Bigmar. While the Complaint alleges the consideration paid was inadequate because an unspecified portion of it was supposedly diverted to one of Bigmar's principals, it does not allege or suggest the consideration received was insufficient to satisfy whatever damages Bigmar allegedly owes to Mayne. Although the sale of the Barbengo facility may have made it impossible for Bigmar to honor the supply contracts, if anything, the receipt of millions of dollars enhanced its ability to satisfy whatever damages it allegedly owes to Mayne.

For these reasons, as well as those set forth in APP's Opening Brief, Mayne's claims for breach of contract and fraudulent conveyance against APP should be dismissed.

# ARGUMENT

### A.  Mayne's Breach Of Contract Claims (Counts IX, X, XI, XII and XIII) Fail To State A Claim Upon Which Relief Can Be Granted

In its Complaint, Mayne alleges that APP is the "successor" to Bigmar under Bigmar's contracts with Mayne because APP acquired all of Bigmar's equipment for the manufacture of four cancer drugs Bigmar was allegedly obligated to supply to Mayne. (Complaint, ¶ 33.) APP briefed the insufficiency of this allegation in its Opening Brief and refers the Court to the arguments made therein. Recognizing the insufficiency of this allegation, in its Answering Brief Mayne argues that APP is the successor to Bigmar under the Bigmar contracts because the sale of the Barbengo facility was allegedly entered into for the fraudulent purpose of hindering Mayne in its status as a creditor of Bigmar. (Answering Brief, pp. 4-6.) However, Mayne's Complaint fails to allege facts sufficient to support this theory of successor liability.

As discussed more fully in APP's Opening Brief, the general rule under Delaware law is that where one company sells or otherwise transfers *all or substantially all* of its assets to another company, the latter is not liable for the debts and liabilities of the transferor. *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977). The fraud exception upon which Mayne relies is one of four exceptions to this general rule of non-liability. *LiButti v. United States*, 178 F. 3d 114, 124 (2nd Cir. 1999). By definition, therefore, the exception is limited to circumstances where one corporation purchases all or substantially all of the assets of another corporation.[1] Mayne carefully alleges only that APP purchased all of Bigmar's *equipment* for the manufacture of the drugs that are

---

[1] Although Mayne claims that because a fraudulent purpose is alleged in the Complaint, it need not allege that the sale constituted a transfer of all or substantially all of Bigmar's assets, it cites no legal authority for this statement. *See* Answering Brief, p. 6, fn 5.

the subject of the supply contracts, and that Bigmar will "likely" soon cease to exist. (Complaint, ¶ 33.) There is absolutely no indication in the Complaint as to what percentage of Bigmar's assets APP purchased, and Mayne's statement as to Bigmar's status is overtly speculative. The threshhold facts necessary to invoke the fraud exception (the sale of all or substantially all of Bigmar's assets to APP), therefore, are not pled by Mayne.

Moreover, the fraud exception applies only where the alleged fraud is engaged in for the purpose of *escaping liability*. *Raytech Corporation v. White*, 54 F. 3d 187, 192 (3rd Cir. 1995). A classic example is a transaction designed to insulate a company from prospective tort claimants, leaving a company with significant liabilities and insufficient assets to satisfy them. *See, e.g., Schmoll v. ACandS, Inc.*, 703 F. Supp. 868 (D. Or. 1988) (successor liability allowed based on fraud exception where corporate restructuring left company with thousands of prospective tort claimants with little assets because restructuring was designed with improper purpose of escaping asbestos-related liabilities); *Raytech*, 54 F. 3d at 192 (discussing *Schmoll* decision in detail). Mayne's Complaint contains the conclusory allegation, based upon information and belief, that "the defendants performed the transaction, at least in part, to hinder Mayne in its capacity as both a competitor of APP and a creditor of Bigmar." (Complaint, ¶ 32.) APP disputes that Mayne is a "creditor" of Bigmar for the reasons set forth in its Opening Brief. However, even assuming, *arguendo*, that Mayne is a creditor of Bigmar, there are no facts pled by Mayne which establish that the sale of the Barbengo facility has in any way hindered Mayne's status as a creditor.

Mayne argues in its Answering Brief that it is a creditor of Bigmar because Bigmar breached its supply contracts, thereby giving rise to a claim for damages.

4.

The sale of the Barbengo facility may have prevented Mayne from fulfilling the contracts, however, the Complaint contains no allegation that the sale was designed to, or will have the effect of, hindering Bigmar from satisfying any damages it allegedly owes to Mayne. Indeed, the Complaint suggests otherwise, alleging that Mayne received millions of dollars for the sale of the Barbengo facility. Although Mayne alleges this consideration was "inadequate," it does not allege that it left Bigmar with insufficient funds to satisfy its obligations – if anything, the receipt of millions of dollars improved Bigmar's position in this regard.

Nor does Mayne allege that Bigmar is insolvent. Although addressed previously, APP revisits this issue because it is discussed at some length in Mayne's Answering Brief. Contrary to Mayne's assertions in its Answering Brief, the fact that Bigmar allegedly was "experiencing financial difficulties," and as a result did not satisfy its contractual obligations to Mayne, does not establish insolvency. The Delaware statute upon which Mayne relies provides that a "debtor who is generally not paying its debts as they become due is presumed to be insolvent." 6 *Del. C.* 1302(b). Bigmar's contractual obligation to Mayne is not a "debt" within the plain meaning of this statute; in fact, Mayne's Complaint contains no facts as to whether or not Bigmar is "generally not paying its debts."

Mayne also has attached as Exhibit A to its Answering Brief a document which allegedly indicates that Bigmar, Inc. is a void corporation because it has defaulted on its taxes. This document should be disregarded. The document relates only to defendant Bigmar, Inc., not Bigmar-Bioren Pharmaceuticals, S.A. ("BBP"), which is organized under the laws of Switzerland and operated the Barbengo facility. (Complaint,

¶ 12.) Mayne presents no evidence, and its Complaint contains no allegations, that BBP is void or insolvent.

### B. Mayne's Fraudulent Conveyance Claim Fails To State A Claim Upon Which Relief Can Be Granted

Mayne argues that its fraudulent conveyance claim is also sufficient because its Complaint alleges that Bigmar sold the Barbengo facility to APP with the actual intent to hinder Mayne as a creditor of Bigmar. As a result, Mayne argues it need not allege facts showing Bigmar was rendered insolvent as a result of the transfer.

This argument fails for the same reason that Mayne's arguments in support of its breach of contract claims fail. Simply put, there are no facts alleged in the Complaint, beyond Mayne's conclusory allegation of fraudulent intent, that support Mayne's contention that Bigmar entered into the Barbengo transaction to hinder Mayne in its status as an alleged creditor. Indeed, Mayne alleges only one of the eleven indicia of actual intent to defraud identified in Delaware's fraudulent transfer statute, namely, that Bigmar received less than adequate consideration for the Barbengo facility. *See* 6 *Del. C.* 1304(b)(1)-(11). Mayne's claim for fraudulent conveyance should not be allowed to proceed upon these unsupported, conclusory allegations. Rule 9(b), requiring that fraud be pled with particularity, applies to fraudulent conveyance proceedings. *MacGregor Sporting Goods, Inc. v. Riddell Sports, Inc.*, 199 B.R. 502, 515 (D. N.J. 1995). Consequently, conclusory allegations of scienter, i.e., intent to defraud, are sufficient only if supported by facts giving rise to a strong inference of fraudulent intent. *National Council On Compensation Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 179 (D. Conn. 2003). No such specific facts evidencing fraudulent intent are pled by Mayne.

6.

## CONCLUSION

For the foregoing reasons, as well as those set forth in APP's Opening Brief, APP respectfully requests that its Motion to Dismiss Counts IX, X, XI, XII and XIII of the Complaint be granted in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  *Attorneys for Defendant*
  *American Pharmaceutical Partners, Inc.*

OF COUNSEL:
Joseph F. Coyne, Jr.
Mark S. Greenstone
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
(213) 620-1780

April 6, 2005
459083

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following: Adam Wyatt Poff (apoff@ycst.com).

_____
Thomas C. Grimm (#1098)
tgrimm@mnat.com

459083